**ANGELINA CASUALTY COMPANY,**
Appellant,

v.

**Bland BLUITT, Appellee.**

No. 15961.

United States Court of Appeals
Fifth Circuit.

June 30, 1956.

John G. Tucker, Beaumont, Tex., Orgain, Bell & Tucker, Beaumont, Tex., for appellant.

Joe H. Tonahill, Jasper, Tex., for appellee.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

Bland Bluitt, the appellee here, sustained a back injury in May of 1954 while working for Temple Lumber Company, in Sabine County, Texas. For this injury he was paid compensation. He returned to work. On August 24, 1954, a cross-tie fell on and injured his foot, breaking one of his toes. He worked for about a week before the fracture was discovered. His foot was then put in a cast and he was off work until early in November of 1954, when he returned to the job. He was paid compensation for the eight or nine week period of his layoff. The appellee developed a calcium deposit in the ball of his injured foot giving him pain and causing him to shift his weight. Pain in appellee's leg and back followed and on March 5, 1955, his employment was terminated by his employer.

The appellee brought suit in the District Court for the Eastern District of Texas, basing Federal jurisdiction on diversity of citizenship, against the appellant which was the insurance carrier having the Workmen's Compensation coverage of appellee's employer. His complaint set forth his injury and asserted that he was permanently and totally incapacitated and entitled to judgment so measured. A lump sum award was sought. The appellant admitted the injury to the appellee's foot but asserted that the only compensation for the injury to which appellee was entitled was for the period between the date he stopped work following the injury on August 24, 1954, and the date in November when he returned to work. For this period compensation had been paid. For the subsequent incapacity, the appellant contended, the injury of May was the cause and for it settlement had been made.

By the statutes of Texas compensation to injured employees is fixed, with respect to certain enumerated injuries, at 60% of the average weekly wage, but not exceeding $25.00 per week, for stated periods. It is provided in the enumeration that for the loss of, or the loss of use of, a foot the period is 125 weeks. In cases of permanent partial disability resulting from injuries (other than the loss of, or loss of use of, an arm or leg or some part or appendage thereof or of

the loss of sight or hearing, for which specific provision is made) the compensation is 60% of the average weekly wage, not exceeding $25.00, multiplied by the percentage of incapacity for not exceeding 300 weeks. Where the injury results in total incapacity the compensation is fixed at 60% of the average weekly wage, not exceeding $25.00, for not more than 401 weeks from the date of the injury. Tex.Rev.Civ.Stat. Title 130, Art. 8306, §§ 10–12(a), as amended Vernon's Ann.Civ.St. art. 8306, §§ 10–12(a). Lump sum settlements are authorized where hardship and injustice would otherwise result. Tex.Rev.Civ. Stat. Title 130, Art. 8306, § 15.

As a witness in his own behalf, the appellee was examined at length, on direct and cross, redirect and recross, and again on redirect and recross. His testimony is not consistent. On direct examination he said that the hard place in his injured foot caused his back "to go to hurting". Under cross-examination he stated that he never got over the "back trouble" which resulted from the former injury. On redirect examination he testified that he started having the back trouble when they took the cast off his foot and he started back to work, but that he was not having back trouble before he started back to work. The appellee's doctor, on direct examination, testified that the appellee was permanently disabled for manual labor and attributed the disability to the consequences of the foot injury. The doctor testified as to the calcium deposit, previously mentioned, in the foot, a curvature of the spine to the right, a degenerative spinal disc and a straightening of the normal inward curve of the spine. On cross-examination of appellee's doctor, he could not recall having been told of the earlier back injury, and it was said by him that if he had been told that the appellee had the same back complaint ever since the earlier injury his opinion would be changed. For the appellant an orthopedist and a radiologist testified that they found no connection between the foot injury of the appellee and his back condition. Other evidence, except as may be the subject of later comment, need not be related. An average weekly wage of $42.00 was stipulated and the appellant made no objection to the payment in a lump sum of any compensation that might be awarded.

In response to interrogatories submitted to the jury under Fed.Rules Civ. Proc. rule 49(a), 28 U.S.C.A., it returned a verdict finding (1) that the appellee, as a result of his injury of August 24, 1954, sustained a total loss of the use of his foot beginning on that day for a period of eight weeks; (2) that as a result of such injury he sustained a 50% partial loss of the use of his foot for 400 weeks commencing November 4, 1954; (3) that the effects of the injury resulted in a loss of the use of his leg at or above the knee; (4) such loss of use was not total; (5) that his loss of use of his leg was a 50% partial loss of use for a 400 week period commencing November 4, 1954; (6) that the injury of August 24, 1954, extended to and affected appellee's back; (7) not resulting in a total incapacity to labor; (8) but did result in a 50% partial incapacity for 400 weeks. The appellant made motions for judgment notwithstanding the verdict and for a new trial. The motions were overruled. Judgment for appellee was entered for eight weeks compensation benefits at $25.00 per week commencing August 24, 1954, and for 300 weeks at 50% partial incapacity. Credit was given for the compensation previously paid. The award was reduced to a present worth lump sum value for which judgment was entered.

■ The appellant objected at the trial to the propounding of Interrogatory No. 3 posing the questions as to the loss of use by the appellee of his leg at or above the knee. The objection is renewed on this appeal and it is urged that there was no evidence of probative value before the court on which the question might be predicated. The finding on this query was not the basis for judgment, it being based on the foot injury and the

general disability due to the back condition. Only if there was error in the court's submission of an interrogatory with respect to general disability and the entry of a judgment based on the jury's finding of a general incapacity on account of the appellee's back condition would it be material whether the question as to loss of use of the leg was properly asked. Since we are holding that the issue of general incapacity was properly submitted and that judgment upon it was properly rendered, we shall not determine the propriety of a question on the loss of use of the leg. Prejudice will not result from the use of the interrogatory as neither it nor the answers to it were factors in the determination of the award.

■ The appellant urges here as it urged below that there was no evidence of probative value warranting the submission of the interrogatories (Nos. 6, 7 and 8) presenting issues as to the appellee's general incapacity due to his back condition as caused by the foot injury. In support of this position the appellant points to the testimony of the appellee that the back trouble with which he was afflicted at the time of the trial was the same as that resulting from an earlier injury. But we have also his statement that it was the same type and that it was in the same place, that it was a different pain in the same place, and that his present trouble in his back began after the cast was removed from his foot and he started back to work. The testimony as a whole and not isolated portions of it must be considered. It must be kept in mind too that the appellee was a laborer of little education. His doctor referred to him as a very humble, illiterate and sincere person with whom you have to be very patient. A witness for the appellant who was the appellee's foreman or supervisor and who discharged him from his job said that the appellee was laid off because he had a poor understanding about his work. The work of appellee, as described by this witness, was that of a track laborer, "retieing the track, spik-ing, handling the shovel, and doing all that work."

■ The appellant, in support of this contention, cites the rule that "The testimony of a party to a suit and admissions made by him are binding upon him." 17 Tex.Jur. 928, Evidence—Civil Cases, § 419. Where the testimony of a party "is clear, direct, positive and free from contradictions and inconsistencies, and there are no circumstances to cast any suspicion upon it, then such testimony is to be taken as true as a matter of law and not merely as creating an issue of fact." Wedegartner v. Reichert, Tex.Civ.App.1948, 218 S.W. 2d 304, 310. A Texas Court has also said, "While it is the general rule that testimony of a party to a law suit must be construed as binding upon him, yet there is another general rule that the same is not controlling where such party subsequently modifies or explains his former testimony." Pacific Fire Ins. Co. v. Donald, Tex.Civ. App.1949, 217 S.W.2d 431, 434. Applicable here is the statement that, "A party testifying does not do so at the peril of having every slip of his tongue taken as conclusively true, nor is he absolutely bound by inconsistent statements made on cross-examination." 20 Am.Jur. 1032, Evidence, § 1181. As to the appellant's contention that statements of the appellee in his testimony are conclusive against him upon the primary issue of the cause, we say, in the language of the Supreme Court of Texas, "It is our opinion, after reading all of" appellee's "testimony, that the statements are not so clear, definite and unequivocal as to be given that effect. * * * We agree also * * * that contradictions in" appellee's "testimony * * * raised questions of weight and credibility for the jury's determination." Western Union Telegraph Co. v. Coker, 1947, 146 Tex. 190, 204 S.W.2d 977, 980.

■ For the same reasons as preclude the rejection of the appellee's testimony we conclude that the testimony of his physician was for the jury to pass upon. In his testimony, given on cross examination, the doctor stated that

although he didn't recall doing so, he was sure he had asked appellee if he had ever had any back trouble before the foot injury, and because he had made no record of any such prior testimony, it could be concluded that appellee had told him there was no earlier back trouble. The doctor stated that his opinion given on direct examination would be voided if the history given by appellee was false and incorrect. He said that if appellee had told him that he had had the same back complaint ever since an injury in May of 1954 and it had been with him all that time, that would have changed his opinion. Assuming, as the doctor apparently assumed, that he had asked appellee if he had suffered any prior back trouble and had received a negative answer, the conclusion is not justified that the history given by appellee to the witness was false and incorrect, or that appellee had the same back complaint since the earlier injury, and it remained with him up to the time of the examination by the witness. The witness testified that he knew the condition of the disc space "couldn't come on a man" in the short interval between the August 24th injury and the time of the examination, that a lot of the condition of the back as shown by the X-rays existed before he hurt his foot, and that the more recent injury aggravated the preexisting condition. Like the testimony of the appellee, that of the doctor was for the jury to weigh.

■ There was adequate evidence of probative value to justify the submission of the interrogatories. The evidence was sufficient to support the jury's findings and its verdict in answer to the interrogatories.

■■ The appellant urges that the court erred in refusing its request to instruct the jury that the appellee had the burden of proving by a preponderance of the evidence that any incapacity beyond the period for which compensation was paid was not due to the preexisting conditions or injuries. There is no doubt but that the appellee had the burden of proving the injury and the incapacity resulting from it. The court instructed the jury:

"Now, in this case, as in all cases of this type, the burden is on the plaintiff to establish by a preponderance of the evidence not only his right to recover but the extent of the recovery, if any, he is entitled to.

"Now, by preponderance of the evidence is simply meant the greater weight and the degree of the credible evidence. And by credible evidence is simply meant that evidence which you, the jury, deem to be worthy of belief."

In connection with the interrogatories relating to the general incapacity due to the back condition, the court charged:

"Now, there is some evidence in this case of a preexisting diseased condition referred to in the evidence as arthritis or hypertrophic arthritis.

"There is further testimony from the plaintiff himself that in May of 1954, while in the course of his employment with the Temple Lumber Company, as a result of a rope being tangled around his leg, or for some reason, he fell and injured his back as a result of that fall.

"Now, if the arthritis is the sole cause of any trouble or disability or incapacity that the plaintiff has in his back, then, of course, such condition in his back would not be the result of the injury of August 24, 1954.

"On the other hand, if the condition he had in his back and the incapacity, if any, or the disabling effect in his back, is simply the result of this injury in May of 1954, then it would not be the result of this August 24, 1954, injury, or if the disability or trouble he has had in his back, if any he has had, is simply the result of the combination of the arthritis and the previous back injury of May, 1954, such would not be the result of the injury of August 24, 1954.

"So, bearing those instructions in mind, if you find from a preponderance of the evidence that the injury that the plaintiff sustained on August 24, 1954 or the effects thereof extends to and affects his back, then you will answer interrogatory No. 6 'yes', but if you fail to so find from a preponderance of the evidence, you will answer that interrogatory 'no'."

\* \* \* \* \*

"Did the plaintiff, as a result of his injury of August 24, 1954, extending to and affecting his back, suffer total incapacity to labor?

"Now, in connection with that question, I charge you that under this workmen's compensation law, if an employee has suffered a previous injury and then suffers a subsequent injury, which results in a condition of incapacity, to which both injuries or the effects contributed, the insurance company shall be liable to such party only for compensation to which the subsequent injury would have incapacitated the injured employee had there been no previous injury.

"Now you will recall again the testimony in this case as to his injury that the plaintiff admits he received to his back in May, 1954. If that injury produced incapacity to labor in the plaintiff which he had at any time from August 24 on down to now or that he might have in the future, such incapacity to labor is not considered as having resulted from the injury of August 24, 1954, and is not compensable under the workmen's compensation law.

"Now, to illustrate what I mean and solely for the purpose of illustration and not to convey to you any impression the court might have as to what the findings should be in this case—you shall not consider it as being any expression on the part of the court as to what the court believes the evidence in this case shows in that respect, but solely for the purpose of illustrating it:

"Suppose you determine from the evidence in this case that the plaintiff is totally incapacitated because of the condition of his back, and suppose you find in determining upon the evidence in this case that the injury of May, 1954, that is, the prior injury, suppose you determine that that injury and its effects are causing 50 per cent of the total incapacity of the plaintiff that he is now suffering; that the injury of August 24 and the effect thereof extending to his back is only causing 50 per cent? Then the injury of August 24, 1954, would not be causing total incapacity within the meaning of this law, because the insurance company insofar as any incapacities that the plaintiff may be suffering as the result of the May, 1954 injury, is not liable to the plaintiff in this proceeding for that, and the liability to him is only for the incapacity to labor, if any, as a result of the August 24, 1954 injury.

"Now, further, in connection with that question or interrogatory No. 7 and interrogatory No. 8, I instruct you that if a person has a diseased condition such as arthritis and receives an injury which aggravates or inflames this preexisting condition or arthritic condition to the extent that the combined effect of such injury and his preexisting arthritic condition produces incapacity to labor, then such incapacity to labor so produced is considered as having resulted from the injury and is compensable under the workmen's compensation law.

"Now, bear in mind these special instructions the court has just given you in connection with interrogatory No. 7 and interrogatory No. 8 and the other instructions the court has given you throughout the course of this charge.

"If you find from a preponderance of the evidence that the plaintiff, as a result of his injury of August 24,

1954, extending to and affecting his back, suffered total incapacity to labor, then you will answer question (a) of interrogatory No. 7 'yes', but if you fail to so find from a preponderance of the evidence, of course, you will answer that interrogatory 'no'."

Throughout the whole of the court's charge there is a repetition and a stressing of the necessity of findings being based upon a preponderance of the evidence. The instructions given were adequate, and fully and accurately covered the subject matter of the appellant's requested charge.

■■■■ The appellant asserts that the trial court erred in not submitting to the jury an interrogatory asking whether or not any incapacity of the appellee beyond the period for which compensation was paid was solely due to preexisting conditions or diseases. When a trial court submits issues to the jury by special interrogatories, although vested with a wide discretion as to their form and substance, all material factual issues should be covered by the questions submitted. Tillman v. Great American Indemnity Co. of New York, 7 Cir., 1953, 207 F.2d 588. But the same issue need not be twice presented. There would have been a duplication had the appellant's request been granted. It was properly denied. Cf. Liberty Mutual Ins. Co. v. Staley, 5 Cir., 1951, 193 F.2d 75.

■■■■ The appellant would have us hold that it was error to award compensation for eight weeks incapacity due to the loss of use of the appellee's foot followed by a maximum award for 300 weeks on account of general incapacity. An analogous case of the Texas Courts furnishes a precedent and sustains the judgment of the district court. Great American Indemnity Co. v. Meyer, Tex. Civ.App.1954, 272 S.W.2d 569; Meyer v. Great American Indemnity Co., Tex. 1955, 279 S.W.2d 575; Great American Indemnity Co. v. Meyer, Tex.Civ.App. 1956, 285 S.W.2d 276.

■■■■ In his brief the appellee attempts to assert a right to an increased award, basing his contention on the Meyer case, supra, and calling his effort a cross-appeal. No cross-appeal was taken and the question which appellee attempts to raise cannot be considered. Hall v. Keller, 5 Cir., 1950, 180 F.2d 753, certiorari denied 340 U.S. 818, 71 S.Ct. 48, 95 L.Ed. 601.

We find no error. The judgment should be and is

Affirmed.