BUTT *v.* WALKER.

Opinion delivered May 21, 1928.

*A. F. Auer,* for appellant.

MEHAFFY, J. Appellant obtained a judgment in the justice court of Howard County and filed same in the office of the circuit clerk of said county, and subsequently filed a transcript with the circuit clerk of Hempstead

County and had execution issued and directed to the sheriff of Hempstead ·County, and the sheriff levied on the lands occupied by the appellee.

Appellee gave notice, and filed his claim of exemption with the circuit clerk of Hempstead County, claiming the land levied on as his homestead and exempt from execution. The clerk sustained the claim, and issued supersedeas, and appeal was taken to the circuit court, and on the trial in the circuit court appellee's claim of exemption was sustained, and from that judgment an appeal was taken to this court.

The appellee had lived on the land about 23 years. His wife had died, and he continued to live on the land, and finally married a second wife, from whom he obtained a divorce on the 12th day of November, 1926. On the 8th day of November, 1926, the transcript of the judgment was filed with the circuit clerk of Hempstead County. After appellee obtained his divorce in November, 1926, he married again, and is still living on the land in question.

It is the contention of the appellant that, upon the filing of the transcript with the circuit clerk in Hempstead County on the 8th day of November, 1926, said judgment became a lien on the land immediately upon the granting of the divorce on the 12th day of November. That the lien attached as soon as appellee was divorced, and it is contended that the homestead exemption is not for the benefit of the husband alone, but to enable him to care for his family or those dependent on him for support, and that, when he is no longer under obligation to support any one, he has no homestead exemption.

Appellant calls attention to a number of cases, but most of the authorities referred to by appellant are unlike the instant case.

The undisputed proof is that the appellee has lived on the place that he claims as his homestead for 23 years; that his wife died, and he afterwards remarried, was divorced from the second wife, and then married again,

but during all this time he lived on the place claimed as exempt, and occupied it as a homestead. No one can acquire a homestead unless he is at the time a married man or the head of a family. But if, while a married man or head of a family, he acquires a homestead, he does not lose his right to claim it as exempt because his wife dies or because he is divorced, even though he may have no family living with him.

"While the husband may retain his homestead under the statute of this State, after having acquired it as the head of a family, though his wife may have obtained a divorce against him and he literally have no family left him, he has been allowed to retain his homestead; but he could not now declare upon an original homestead, as he is not the head of a family." Waples on Homestead and Exemption, 74.

The authorities are not in harmony on the question involved. There are authorities to sustain the position taken by appellant, but this court has announced the rule which prevails in this State, and, the question having been decided by this court, it is unnecessary to cite or discuss decisions of other States.

This court has said:

"On the next point, as to whether the land seized and sold under the execution was the homestead of the defendant, the chancellor found that Thomas was, for a period of about ten years, the head of a family, and resided upon the land in question, of which he was the owner, and that he has continued to reside upon this land, and still resides upon it and claims it as a homestead. The chancellor thereupon held that the land was his homestead, and exempt from execution. On this question we feel that there is more room for doubt, but, after consideration of the evidence, we think it is sufficient to uphold the finding that Thomas, after the death of his father, owned and lived upon this 110 acres of land, that his mother and a single sister lived with him, that he supported them, and was the head of the family. This

374

being so, it follows that he was entitled, as the head of a family, to claim this land as a homestead. Afterwards, in the course of time, his mother and sister died, and he has now no family. But, though a man cannot acquire a homestead right without a family, yet, when the homestead estate is once acquired, he is not, under the law as construed by the decisions in this State, deprived of it by the loss of his family. When the association of persons which constitutes the family is broken up, whether by separation or the death of some of the members, the right of homestead continues in the former head of the family, provided he still resides at his old home.'' *Baldwin* v. *Thomas,* 71 Ark. 206, 72 S. W. 53.

In the instant case the appellee acquired this land while he was the head of a family, occupied it as a homestead, and he was not deprived of it by the loss of his family. It is true he could not have acquired a homestead if he had not been the head of a family, but, having acquired it and occupied it while he was the head of a family, the fact that his wife died or that a divorce was granted would not deprive him of the right to claim his homestead as exempt if he still resided on it, as the appellee does in this case.

We think the case above referred to, of *Baldwin* v. *Thomas,* is decisive of this case. The judgment is therefore affirmed.