YADON *v.* YADON.

4-6396                                   151 S. W. 2d 969

Opinion delivered June 9, 1941.

*Festus Gilliam* and *R. S. Wilson,* for appellant.

*Geo. W. Johnson,* for appellee.

HUMPHREYS, J.   Appellee, Minnie E. Yadon, was the widow of Jacob C. Yadon, who died in the year 1923 or

1924 leaving said widow and five small children. About the year 1927 or 1928 the widow and children moved from the Greenwood district of Sebastian county to Fort Smith, Arkansas, where they resided as a family, the widow being the head thereof after the death of her husband. So far as this record reflects she did not acquire a home in her own name until August, 1939. At that time she purchased a home for about $600 described as lot 3 in block 47 of Bailey's Addition to the city of Fort Smith, Arkansas. At the time of the purchase of the property only one child, Mary Yadon, was living with her. Mary had lived with her from birth and moved with her mother to the property her mother bought in Bailey's Addition and continues to live with her mother in the home. At the time appellee purchased the property she moved her household goods of the value of about $119 into the home and she and her daughter have continued to reside therein since the date of the purchase. The house and all of the furniture in it belonged to appellee. She paid all the utility bills and other bills incident to housekeeping and directed the affairs of the home.

On the 20th day of November, 1939, appellant, as an intervener in a partition suit between appellee and others as plaintiffs and Paul C. Yadon, defendant, of certain property in the Greenwood district of Sebastian county, obtained a judgment against appellee in the sum of $60 and on the third day of October, 1940, he procured an execution on his judgment against appellee in the sum of $67.45 which amount included the judgment, interest and costs and placed same in the hands of the sheriff of Sebastian county, Arkansas, and directed the sheriff to levy on lot 3, block 47 in Bailey's Addition to the city of Fort Smith, Arkansas, in which appellee and her daughter, Mary, had been residing since August, 1939. It seems that the execution was not levied on appellee's household goods and furnishings. After the real estate was levied upon, appellee filed a schedule of exemptions with the clerk of the court out of which the execution was issued in regular form claiming said property as

her homestead and procured a supersedeas against the execution.

On November 18, 1940, appellant filed a motion to quash the supersedeas and upon a hearing had on the 12th day of December, 1940, the court overruled the motion to quash the supersedeas from which judgment an appeal has been duly prosecuted to this court.

The testimony reflected by the record was, in substance, to the effect that Mary, who is now residing with appellee, is twenty-five years of age and is the only one of the children still residing with appellee; that she is able to work and does work and contributes what she can out of her earnings toward the maintenance of the home; that she did that prior to and since attaining her majority; that her mother charged her no board and that there was no arrangement or agreement between them for her to pay any board; that the daughter had never married and was living with her mother just as she had done all her life; that the amount contributed by the daughter to the mother was in the nature of a voluntary gift and not as an exaction on the part of the mother for maintaining and supporting her; that the daughter had never managed or controlled the household affairs; that the relation of mother and daughter existed between them just as it had during the daughter's entire life.

Appellant contends for a reversal of the judgment sustaining the supersedeas issued by the clerk against the execution on the ground that Mary, the daughter, had attained her majority before appellee acquired her home and that she was not dependent upon her mother for her support and maintenance.

Appellant contends that the sole question at issue in this case is whether or not appellee, Minnie E. Yadon, was the head of a family at the time the execution in question was issued and levied upon the real estate occupied by her as a home, so as to entitle her to claim the right of exemption provided in art. IX, § 3, of the Constitution of 1874, and § 7178, Pope's Digest, of the statutes of Arkansas.

Article IX, § 3 of the Constitution of 1874 is as follows:

"The homestead of any resident of this state who is married or the head of a family shall not be subject to the lien of any judgment, or decree of any court, or to sale under execution or other process thereon, except such as may be rendered for the purchase money or for specific liens, laborers' or mechanics' liens for improving the same, or for taxes, or against executors, administrators, guardians, receivers, attorneys for moneys collected by them and other trustees of an express trust for moneys due from them in their fiduciary capacity.''

Section 7178 of Pope's Digest is in substance the same as the constitutional provision quoted above.

We think that the social status of the family existed between appellee, the mother, and the daughter, Mary, at the time appellee purchased her home and moved onto the property with her daughter and that the social status of the family was not interrupted simply because Mary had attained her majority at the time the mother purchased her home. It is true that at the time appellee purchased the home, Mary, the daughter, was not wholly dependent upon appellee for her support, but the record reflects that she was partially dependent upon her mother therefor. She paid no rent whatever to her mother for her occupancy in the home and only contributed what she could spare to assist her mother in paying the necessary household expenses. The record shows that she was earning when she worked (and that she worked most of the time) about $13 a week. It may be that she could have bought all of her own clothes and paid board elsewhere out of her earnings, but we do not think it was legally incumbent upon her after attaining her majority and obtaining employment to sever the relationship that existed between her mother and herself. Neither do we think it was legally incumbent upon the mother when the daughter attained her majority to require her to vacate the home or charge her with board simply because she became of age and accepted employment. The status of the family was established thoroughly between the mother and daughter during the twenty-five years they had lived together and that status or relationship certainly entitled the mother to claim

that she was the head of a family. In fact, she was the head of a family under a liberal construction of the constitutional provision and the section of Pope's Digest above referred to. We said in the case of *Franklin Fire Insurance Co.* v. *Butts,* 184 Ark. 263, 42 S. W. 2d 559, that: "It is the settled policy of this court that our homestead laws are remedial and should be liberally construed to effectuate the beneficent purposes for which they were intended." This rule that a liberal construction must be given to the provisions of our homestead laws was recently reiterated in the case of *City National Bank* v. *Johnson,* 192 Ark. 945, 96 S. W. 2d 482.

Under the rule of liberal construction as to who is the head of a family as used in the constitutional provision aforesaid we think that the head of a family is one in authority where the status or relationship of the family exists. In the instant case, appellee, after the death of her husband, was the one in authority and control of the family and this relationship has never been broken or disintegrated by the removal of all the children from the family circle. One of her children has always resided with her and was residing with her at the time she purchased the property in question and impressed same as a homestead by actually moving into and occupying same with her daughter.

No error appearing, the decree is affirmed.