**In re Deborah Kaye WARNOCK, Debtor.**

**No. 2:04–BK–74191.**

United States Bankruptcy Court, W.D. Arkansas, Ft. Smith Division.

April 5, 2005.

Eric Soller, for the debtor.

R. Ray Fulmer, Ledbetter, Cogbill, Arnold & Harrison, LLP, Fort Smith, AR, Chapter 7 Trustee.

Kenneth W. Cowan, for River Town Federal Credit Union.

## ORDER

RICHARD D. TAYLOR, Bankruptcy Judge.

Before the Court are the objections to exemptions filed by River Town Federal Credit Union [River Town] and the Trustee, R. Ray Fulmer [the Trustee]. River Town and the Trustee object Debtor's homestead exemption claim under the Arkansas Constitution. The Court has juris-

diction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). The following order constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## FACTS

Debtor, Trustee, and River Town stipulated to the following facts:

1. The Debtor, Deborah Kaye Warnock, filed the instant chapter 7 bankruptcy case on June 21, 2004.

2. In this bankruptcy proceeding, the Debtor lists, on her Schedule A, ownership of certain residential real property, located in Fort Smith, Sebastian County, Arkansas. This real property is legally described as follows: Lot 8, Cloverdale Addition to the City of Fort Smith, Arkansas, which is also referred to as 6208 Crimson Avenue, Fort Smith, Arkansas, 72903.

3. The Debtor claims the above-described real property as exempt homestead, pursuant to the Arkansas Constitutional homestead provisions available for heads of families. The Debtor acquired joint tenancy with right of survivorship in the property, along with her mother, Jorene Williams, by Warranty Deed from Ms. Williams to herself and to the Debtor dated August 24, 2000. This Deed was filed August 31, 2000, as Document number 7025368, with the Sebastian County Circuit Clerk and Recorder.

4. The approximate market value of the real property is estimated by the Debtor to be $90,000.00, and the Debtor estimates the approximate value of her undivided one-half interest to be $45,000.00. There is an approximate total debt outstanding against the property in the amount of $18,000.00. (All figures are stated as of the bankruptcy filing date.)

5. At the time the Debtor, Ms. Warnock, acquired an ownership interest in the real property, on August 24, 2000, she was a single person.

6. At time the Debtor acquired her ownership interest in the real property her daughter, Sarah Warnock, was legally an adult, having been born on March 30, 1981.

7. At the time the Debtor acquired her ownership interest in the real property, she resided there with her mother, Jorene Williams, and her daughter, Sarah Warnock. The Debtor's daughter moved to Fayetteville, Arkansas in 2003, and no longer resides at the real property in question. The Debtor still resides there with her mother.

8. Since the Debtor acquired her ownership interest in the real property, and continuing thereafter, her mother, Ms. Williams, has received monthly Social Security income of approximately $1,000.00 per month.

9. In the instant chapter 7 bankruptcy proceeding the Debtor claims her mother and her daughter as dependents.

10. Although she did not list same in her current petition, the Debtor previously filed a chapter 13 bankruptcy proceeding in this court on September 17, 2001, in case no. 01–71295F. That case was subsequently involuntarily dismissed on January 14, 2004. In that chapter 13 bankruptcy proceeding, the Debtor listed ownership of the real property and also claimed it as exempt homestead under the Arkansas Constitution. She claimed her

mother as dependent, but did not claim her daughter as a dependent.

11. The objecting party, R. Ray Fulmer II, is the court appointed Trustee in this case. The objecting party, River Town Federal Credit Union (fka Sparks Federal Credit Union) is an unsecured creditor of the Debtor.

## LAW

 As a general matter, homestead exemptions under the Arkansas Constitution are to be liberally construed in favor of the exemption. *In re Kimball,* 270 B.R. 471, 478 (Bankr.W.D.Ark.2001). Commensurately, all presumptions are to be made in favor of preservation and retention of the homestead. *In re Jones,* 193 B.R. 503, 506 (Bankr.E.D.Ark.1995). The burden of proof, under both federal bankruptcy law and Arkansas law, is allocated to the parties objecting to the claimed homestead exemption. Fed. R. Bankr.P. 4003(c); *Jones,* 193 B.R. at 506. The Trustee and River Town thus carry the burden.

 Section 522(b)(2)(A) of the Bankruptcy Code allows a debtor to exempt any property exempt under state law as of the date of the bankruptcy petition. 11 U.S.C. § 522(b)(2)(A). Here, Debtor claimed a homestead exemption under Article 9, § 3 of the Arkansas Constitution, which states:

The homestead of any resident of this State, who is married or the head of a family, shall not be subject to the lien of any judgment or decree of any court, or to sale under execution, or other process thereon, except such as may be rendered for the purchase money, or for specific liens, laborers' or mechanics' liens for improving the same, or for taxes, or against executors, administrators, guardians, receivers, attorneys for moneys collected by them, and other trustees of an express trust, for moneys

due from them in their fiduciary capacity.

Ark. Const. Art. 9, § 3; Ark.Code Ann. § 16–66–210 (supp.2003). In order to establish homestead in Arkansas, the following elements must be met: (a) the party claiming the exemption must be the head of a household or married; (b) the property must be occupied as a home; and (c) the party claiming the exemption must be a resident of the state of Arkansas. *In re Webb,* 121 B.R. 827, 829 (Bankr.E.D.Ark. 1990). Here, the main issue contested by the parties is whether Debtor qualifies as a head of household.

a. **The party claiming the exemption must be head of household or married.**

 "Bankruptcy exemptions are 'fixed on the date of filing' and 'only . . . the law and facts as they exist[ed] on the date of filing the petition' are to be considered." *Jones,* 193 B.R. at 507. Accordingly, the Court's focal point is the state of affairs on June 21, 2004, when Debtor's petition was filed. Most of the testimony elicited from Debtor related to the date she acquired her one half interest in the property. However, Debtor's daughter, who was listed as a dependent on Schedule I, did not live with Debtor at the time the bankruptcy was filed, but Debtor's seventy-nine year old mother did live with her and was claimed as a dependent. The question is whether these facts qualify Debtor as head of household.

 Under Arkansas law, "it is not necessary that the homestead claimant be a husband or parent, but something more than a 'mere aggregation of individual residing in the same house' is required." *In re Collins,* 152 B.R. 570, (Bankr.W.D.Ark. 1992). The Arkansas Supreme Court has established three factors that are important in determining whether a claimant

qualifies as head of family: (1) the existence of an obligation upon the claimant to support others residing in the household, *Harbison v. Vaughan*, 42 Ark. 539, 541 (1884); (2) the existence of a corresponding state of dependence upon those being supported, *Id.;* and, (3) the existence of a role of authority for the head of the family where the status or relationship of the family exists, *Yadon v. Yadon*, 202 Ark. 634, 151 S.W.2d 969 (1941). *See also Collins*, 152 B.R. at 572.

■ With regard to the first factor, the obligation to support, case law indicates that the obligation does not have to be a legal one. *See e.g. Collins*, 152 B.R. at 572. In the present case, Debtor testified that her mother had a stroke in 1999 or 2000. Debtor also testified that she supports her mother in many ways including paying the utility bills and the mortgage, purchasing medicine on the mothers behalf, and driving her to various places. Debtor, while perhaps not legally obligated, has undertaken the obligation of supporting her mother who resides in the household.

■ The second factor requires the existence of a state of dependence from the person being supported. Debtor testified that the mother receives approximately $1000 per month in social security. With $12,000 in annual income, it appears the mother depends at least in part on Debtor to assist her in meeting her basic needs. The fact that the dependent person is only partially dependent on the debtor does not defeat a head of family claim. *Collins*, 152 B.R. at 573. Therefore, the second element has been satisfied.

Finally, the third factor requires a role of authority from the person claiming head of family. Again, testimony indicated that Debtor's mother suffered a stroke. While the mother did take the stand and did not appear to be entirely incapacitated from the stroke, there was sufficient testimony that given the mother's age and nature of the medical condition, Debtor had assumed the decision making role with regards to household affairs.

### b. The property must be occupied as a home.

■ The parties all agree that Debtor resides on the property that she is claiming as exempt. This would make this property Debtor's home. Debtor did however testify, upon being questioned by the Court, that she did not really consider the house to be hers.[1] These statements are

---

1. The exchange between the Court and Debtor is as follows:
 Judge: You testified that in August of 2000 your mother owned property and there was no debt on it. Is that correct?
 Debtor: Yes.
 Judge: And she wanted to borrow $20,000 for improvements and to help your brother out. Is that correct?
 Debtor: Yes.
 Judge: And you said her signature wasn't enough.
 Debtor: That is what they told us at the ....
 ummm.... wherever we went... I can't remember the name.... I am sorry, I worked all night, I am a little......
 Judge: That's alright. Take your time. Explain to me how that relates to you in the

same month getting the ½ interest in the house.
 Debtor: Ummmm.... what happened was I don't really consider the house mine at all. I just helped her get a loan. That's the truth. And, ummm ... so, putting my name on the house just helped her get the money that she wanted to get and then we took care of that and then we will... uhhh... when its paid off she will probably take my name.... will probably have my name taken off when its paid off. It was to help her to get a loan, not to give me half the house .... she has four kids.
 Judge: Did you sign the loan?
 Debtor: Yes.

troubling to the Court. However, they do not appear to be sufficient to disqualify Debtor from claiming the homestead exemption. In *Kimball,* the court stated that:

> [w]hether or not Debtor intended to abandon her homestead after the petition date is irrelevant, because "the critical date is the petition date." In considering the abandonment issue, the Court must essentially wear blinders as to facts and circumstances that developed after November 14, 2001, the date Debtor filed her bankruptcy petition.

*Kimball,* 270 B.R. at 479. Taking the "snapshot in time" approach to the present case, at the time of filing the petition Debtor did have a legal interest in the property and she did use the house as her home. The fact that Debtor sometime in the future may transfer her interest is not relevant. Debtor's admission that she did not consider the house hers does not change the fact that she is the legal title owner and that all of the elements set forth by Arkansas law on homestead have been met.

In sum, Debtor's comments reflect that her ownership is basically a result of her desire to assist and accommodate her mother. This, however, does not change the fact that Debtor is the legal owner, is a resident of Arkansas, occupies the premises as her home, and is a head of household. How this property was obtained is irrelevant. The snapshot in time illustrates the property is legally hers. Were the Court to somehow equitably treat her comments as diminishing her title in the property, then the Court would, in effect, be determining that the title was vested solely in the mother and then there would be no interest for the trustee to examine or administer for the estate.

**c. The party claiming the exemption must be a resident of the state of Arkansas.**

This element appears to have been met without question and does not require any analysis by the Court.

The Trustee's and River Town's objections to exemptions are overruled.

IT IS SO ORDERED.